[Cite as *State v. Rahman*, 2014-Ohio-5121.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13CA68 |
| MANI RAHMAN | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Case No. 13 CR 112 D |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 18, 2014 |

APPEARANCES:

For Plaintiff-Appellee

JAMES J. MAYER, JR.
PROSECUTING ATTORNEY
RICHLAND COUNTY, OHIO

By:  JILL M. COCHRAN
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

BYRON D. CORLEY
22 North Walnut
Mansfield, OHio 44902

*Hoffman, P.J.*

{¶1} Defendant-appellant Mani Rahman appeals the October 3, 2013 Judgment Entry entered by the Richland County Court of Common Pleas denying his separate motions to withdraw plea and to set aside judgment of conviction or sentence. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On January 25, 2013, Appellant engaged in an argument with his live-in girlfriend. During the altercation, Appellant hit his girlfriend in the eye with his fist, causing a fracture of the orbital socket.

{¶3} As a result, on March 8, 2013, the Richland County Grand Jury indicted Appellant on one count of felonious assault.

{¶4} On April 15, 2013, Appellant entered a plea of guilty to the charge.

{¶5} On June 3, 2013, Appellant's counsel filed a motion to withdraw as counsel.

{¶6} On June 5, 2013, the trial court continued sentencing pending Appellant's placement in a community based correctional facility. On June 15, 2013, Appellant learned he was not accepted in the community based correctional facility. The trial court sentenced Appellant to a term of four years in prison.

{¶7} Appellant filed a motion to withdraw his plea on September 9, 2013. Appellant also filed a petition to vacate or set aside judgment of conviction or sentence on the same date. Via Judgment Entry of October 3, 2013, the trial court denied Appellant's motions.

**{¶8}** Appellant filed a pro se appeal and brief on October 17, 2013. On February 18, 2014, this Court remanded the matter to the trial court for the purpose of appointing appellate counsel. The trial court appointed counsel on February 28, 2014.

**{¶9}** An appellate brief was filed on March 4, 2014, pursuant to *Anders v. California* (1968), 386 U.S. 738, rehearing denied, (1967), 388 U.S. 924, assigning as error:

**{¶10}** "I. THE TRIAL COURT DID ERR IN FINDING THAT RAHMAN'S PLEA WAS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.

**{¶11}** "II. THE TRIAL COURT ERRED IN FAILING TO GRANT TRIAL COUNSEL'S MOTION TO WITHDRAW."

I.

**{¶12}** In the first assignment of error, Appellant asserts the trial court erred in denying his motion to withdraw his guilty plea. Specifically, Appellant maintains his plea was not made knowingly, intelligently, or voluntarily.

**{¶13}** Ohio Criminal Rule 11 requires Appellant's plea of guilty be made knowingly, intelligently and voluntarily.

**{¶14}** Criminal Rule 11 reads in pertinent part,

(C) Pleas of guilty and no contest in felony cases

(1) Where in a felony case the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he or she has the right to be represented by retained counsel, or pursuant to Crim. R. 44 by appointed counsel, waives this right.

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶15}** The record reflects the following exchange occurred on the record at the plea hearing herein,

THE COURT: Mr. Rahman, if you plead guilty you will give up all those rights that I've just talked to you about. When you plead guilty, you admit your guilt and you don't need a trial. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: You are accused of felonious assault. They say it happened on January the 25th of this year. They say the victim's an [E.R.]. Apparently there was an incident in which you got angry with her, you assaulted her, hit her in the face causing a blow-out fracture to her left orbital socket and bruising to her face. Do you understand what you are accused of?

THE DEFENDANT: Yes, sir.

THE COURT: That's a second degree felony. It carries a maximum sentence of eight years in prison and a fifteen thousand dollar fine. Do you understand the maximum sentence you can receive?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Ms. Couch-Page, I understand that although there's a presumption of prison for a second degree felony, you are, with the victim's consent, recommending that instead he get a period of probation which includes residential treatment in a community-based correctional facility, is that right?

MS. COUCH-PAGE: That's correct, Your Honor.

THE COURT: That's a very important concession on their behalf, Mr. Rahman, because only with that sort of recommendation can I get

past the presumption of prison in this case. So if you do, in fact enter your plea in this case, you behave yourself between now and sentencing, then I would expect you to get the benefit of that probation recommendation. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Now, the thing about a probation recommendation, if you get into trouble between now and the time of sentencing, such as violating a no contact order or doing something else that's a violation of your conditions, then that means that deal is off the table. So you run a risk if you are deciding to do anything against good behavior. So you have to maintain your good behavior, you have to show up for sentencing when you are supposed to be here. If those things happen, and if we don't find any surprises in your PSI then I would expect you to get that recommendation of probation. If you do something that prevents it I can't promise you that you will get probation because I don't know what you are going to do between now and then. Do you understand?

THE DEFENDANT: No. You are saying that before I go to the halfway house I will be able to get out?

THE COURT: That's a question about bond. I have discussed bond with your attorney. Here's what I told him, I told him that after we have you evaluated by the CBCF, and they tell me you are an acceptable candidate, really interested in treatment, at that point I will probably give you a bond so you can be out until the time of sentencing. So whether

you do something stupid in jail, you get in trouble in jail or you get in trouble when you get out, any of those things can mess up your probation deal. That's what I'm telling you.

THE DEFENDANT: Yes, sir.

THE COURT: You don't get probation regardless of what you do. You get probation if you behave yourself and do what you are supposed to between now and sentencing.

* * *

THE COURT: Has anybody promised you anything to get you to plead guilty besides what I just talked to you about?

THE DEFENDANT: No.

THE COURT: Has anybody threatened you or pushed you into pleading guilty?

THE DEFENDANT: No.

THE COURT: The other thing I want to mention is Post Release Control. Now hopefully it's not going to apply to your case because we're not planning for you to go to prison. But if you did go to prison in this case. When you completed your prison time you would be put on a three year period of Post Release Control. So you would be put on supervision after you got out of prison.

It's mandatory for a second degree felony. During that three year period you would have conditions of supervision. If you violated those

conditions you could be sanctioned up to an including being sent back to prison, but no more than half the time that I gave you.

The second thing about being on Post Release Control, if you commit a new crime while you're on Post Release Control, the judge who sentences you on the new crime can give you a greater penalty. They can take your remaining Post Release Control time, convert it to prison time and add it to your new sentence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: There's a written summary of rights, Mr. O'Donnell. Will you go over that with him and make sure he understands it?

THEREUPON, there was a conversation held off the record between counsel and his client.

MR. O'DONNELL: Can I approach, Your Honor?

THE COURT: Yes. Mr. Rahman, did you have any questions on this written summary of rights your attorney just read to you?

THE DEFENDANT: No.

THE COURT: Is there anything else at all you would like me to explain to you?

THE DEFENDANT: No.

THE COURT: How do you plead to this charge of felonious assault?

THE DEFENDANT: Guilty.

THE COURT: I accept that plea as knowingly and voluntarily made after our conversation.

**{¶16}** Tr. at 4-9.

**{¶17}** Appellant asserts at the sentencing hearing, prior to being sentenced, he read a letter into the record stating he did not want to make his plea deal. However, upon review of the record, the following exchange occurred at the June 5, 2013 sentencing hearing,

MR. O'DONNELL: Your Honor, I filed a motion to withdraw in this case because my client has no confidence or doesn't want me to represent him anymore. He's attempted to file a grievance. I believe he wants to have his plea vacated as well, but I have never discussed that with him. I just received in the last week or so things of that nature, like from the grievance and things of that nature. I feel that I cannot go forward as his counsel under these circumstances."

* * *

THE COURT: Mr. Rahman, what's your thinking at this point?

THE DEFENDANT: I don't want the plea vacated. Can I present this?

* * *

THE COURT: In the meantime you filed a number of other motions, including a motion to dismiss time at halfway house, which is telling me you don't want to go to a CBCF.

THE DEFENDANT: No, no. I thought they wasn't coming to interview me, because I was told by John that the following week after the 15th I would be doing my interview, and then if I got accepted I would be getting out until June 5th, and nobody came to see me. The same day they came to give me my interview was the same day I got the motion back from the prosecutor. I thought I wasn't even getting an interview. I thought I was just going to be getting jail time, because I was told if I didn't get accepted to CBCF that I was going to prison. That's the only reason why I'm sending the motion, that's the only reason.

THE COURT: CBCF will not interview you until they have a presentence investigation.

THE DEFENDANT: And I did it.

THE COURT: They had to get the presentence investigation before they can - -

THE DEFENDANT: I did it on the week of the 15th, I did the presentence investigation, of April. And I didn't have any interview all the way until it was like the last week of May. I thought I wasn't even having the interview. Someone told me if I didn't get an interview, if I didn't get accepted to Tiffin that I will be going to prison.

THE COURT: I don't know exactly the day of this, but it was done fairly recently. Again it's not the interview by the presentence investigation writer which gives a presentence investigation, it's the type of presentence

investigation.  When that's typed up, then the CBCF will look at it and then they will interview you.

There is another problem with your case.  You have a second degree felony.  You are more violent than the people they usually deal with.  They have to get an exception in that way as well.  Besides that you have a juvenile arson conviction.  Most residential programs don't want anybody who has an arson conviction.  So you are a difficult person to place in a community-based correctional facility or any residential program.  It takes some time to do those things.  And I see you just constantly peppering the Court with motions, accusing the victim of being a liar over and over again.

THE DEFENDANT: No, no, no.  The thing that was said on the stand- - I never tried to take anything back from the mistakes I made, Your Honor.  I am not trying to take any mistakes back from what I've done.

* * *

THE COURT: Here's the situation, Mr. Rahman, there was a referral to the CBCF, they're going to make their evaluation, they are going to take you or not take you.  We will find that out soon and we will come back and that will be one of the additional factors we will consider in sentencing.  If you are not in the CBCF you are not going to be on probation.  You understand that, right?

THE DEFENDANT: I thought that was the deal.

THE COURT: The deal is you are in a CBCF if they will take you.  I don't run the CBCF.  They run their own programs.

THE DEFENDANT: There is no other programs?

THE COURT: The deal was CBCF, that's the deal.  That's the most intensive residential program we have.

THE DEFENDANT: And if they turn me down?

THE COURT: Then you are going to prison.  So we will wait and see what they say.  We will come back there, I'm thinking, next Monday.

Mr. O'Donnell, did you have something else?

MR. O'DONNELL: No, Your Honor.

THE COURT: Are you still wanting out?

MR. O'DONNELL: Depends on him, I guess.

THE COURT: There is nothing else to do but sit and wait for the chips to fall.

MR. O'DONNELL: It was the motion to dismiss the CBCF part that got things thrown for me.

THE DEFENDANT: Your Honor, can I just ask a question, please?

THE COURT" Yes.

THE DEFENDANT: Why not if they don't let me go to CBCF I can't just do probation?  I'm just asking, I'm not trying to disrespect you or anything.

THE COURT: Let me explain it to you.  You are a violent felon. You should go to prison, the presumption is to go to prison.  The only reason I

considered anything else was because the prosecutor made a recommendation with the victim's input, and now they've found the victim lied to them. They still made that recommendation, and I am willing to follow through on that, but it depends on whether you are admitted to the CBCF. The CBCF is the one chance you have not to go to prison. You are a second degree violent felony who caused serious harm to this woman, and that means you are normally a prison case. The presumption under Ohio law is that you go to prison. The only way to get past that presumption is there is a stipulation about all these things. It's hard to do that in your case because you have a prior record of having gone to prison repeatedly. So you are a very difficult case to put on probation.

There was that one opportunity, which I am trying to follow through for you. I sent them a letter today asking them to consider your application. I can do no more than that. So that will come through or it won't. If it does you will get grace you don't deserve, and if it doesn't you will get the sentence you deserve.

THE DEFENDANT: What is that, Your Honor?

THE COURT: Prison.

THE DEFENDANT: I know, but I mean how much time?

THE COURT: That remains to be seen. I'm not at that point yet, I'm not working that number out yet. Go ahead and have a seat, if you would, Mr. Rahman.

{¶18} Tr. at 2-3; 7-9; 17-20.

**{¶19}** Upon review, we find Appellant did not seek to withdraw his plea, but instead sought to dismiss his counsel. Upon conclusion of the hearing, Appellant agreed to await determination at sentencing. Accordingly, we find Appellant's plea was knowingly, intelligently, and voluntarily made in compliance with Criminal Rule 11.

**{¶20}** The first assignment of error is overruled.

II.

**{¶21}** In the second assignment of error, Appellant maintains the trial court erred in denying counsel's request to withdraw at the sentencing hearing; thereby, depriving him of his right to the effective assistance of counsel.

**{¶22}** A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied upon as having produced a just result. *Id.*

**{¶23}** Upon review of the record, Appellant has not demonstrated but for any presumed error of counsel, the outcome at sentencing would have been otherwise. Appellant was informed of the potential for a prison sentence and counsel adequately represented Appellant at the plea hearing herein. Accordingly, the second assignment of error is overruled.

{¶24}    The judgment entered by the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur